# UNITED STATES DISTRICT COURT

for the

_____ District of Columbia

_____ Division

|  |  |
|---|---|
| Nihhia Earas<br>_____<br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint.*<br>*If the names of all the plaintiffs cannot fit in the space above,*<br>*please write "see attached" in the space and attach an additional*<br>*page with the full list of names.)*<br>**-v-**<br><br>Sirius XM Radio<br>_____<br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the*<br>*names of all the defendants cannot fit in the space above, please*<br>*write "see attached" in the space and attach an additional page*<br>*with the full list of names.)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case: 1:20-cv-00326
Assigned To : Unassigned
Assign. Date : 2/6/2020
Description: Employ. Discrim. (H-DECK)

Jury Trial: *(check one)* ☐ Yes ☐ No

RECEIVED

FEB - 6 2020

Clerk, U.S. District
Bankruptcy Courts

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I.     The Parties to This Complaint**

**A.     The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Nihhia Earas |
| Street Address | 4115 Georgia Ave NW Apt. 201 |
| City and County | Washington |
| State and Zip Code | DC 20011 |
| Telephone Number | (443) 613-0772 |
| E-mail Address | Neihas09@gmail.com |

**B.     The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

1

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

    Name                      SirusXM Radio

    Job or Title *(if known)*

    Street Address           1500 Eckington Pl. NE

    City and County        Washington

    State and Zip Code    DC 20002

    Telephone Number   (202) 380-4000

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C.     Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Sirius XM Radio |
| Street Address | 1500 Eckington Pl. NE |
| City and County | Washington |
| State and Zip Code | DC 20002 |
| Telephone Number | (202) 380-4000 |

## II.     Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑        Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐        Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐        Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑        Other federal law *(specify the federal law)*:

Genetic Information Nondiscrimination Act (GINA), Equal Pay Act (EPA)

☐        Relevant state law *(specify, if known)*:

☐        Relevant city or county law *(specify, if known)*:

### III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☑ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☐ Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)
9/18/2019

C.   I believe that defendant(s) *(check one)*:
- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
- ☑ race — African-American
- ☑ color — Dark-brown
- ☑ gender/sex — Female
- ☐ religion
- ☐ national origin
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*
  _____

E.   The facts of my case are as follows. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.      It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

B.      The Equal Employment Opportunity Commission *(check one)*:

☐       has not issued a Notice of Right to Sue letter.

☑       issued a Notice of Right to Sue letter, which I received on *(date)*  11 13 2019 .

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.      Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐       60 days or more have elapsed.

☐       less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:

Signature of Plaintiff

Printed Name of Plaintiff

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

The Plaintiff, Ms. Nikkia Echols, is a brown-skinned, African American Female. Ms. Echols has been employed with SiriusXM Radio in Washington DC since 2014. At the time of filing, the Plaintiff resides at 4100 Georgia Avenue, Northwest, Washington, DC 20011.

## WORK HISTORY WITH SIRIUSXM

1. February 26th, 2014, The Plaintiff, Ms. Nikkia Echols, started with SiriusXM Radio in the Washington, DC offices as a Talk Programming Assistant,

2. November 19th, 2015 Ms. Echols began in the Music Programming Coordinator position. The Plaintiff interviewed for the position twice. This was considered a transfer to a different department. It was also a promotion from part-time to Full-Time employee.

3. Ms. Echols has remained in the Music Programming Coordinator title since November 2015.

## COMPLAINTS

The Plaintiff alleges that she was subject to a hostile work environment based on her Color, Race, and in retaliation to prior complaints to management in violation of Title VII and the Equal Pay Act (EPA). Ms. Echols believes expressing her concerns to management directly led to negative performance evaluations, being withheld from promotion, being withheld from a pay raise, being given a heavier workload than her peers and other forms of retaliation. Ms. Echols believes the following complaints to management contributed to a more stressful, retaliatory, hostile work environment.

1. Tuesday, February 16th 2016, The Plaintiff reached out to James "Jinx" Bonner, Wilbur Morris and Vanessa Mojica expressing future interests after a round of promotions was announced.

2. February 7th, 2017 James "Jinx" Bonner held a Goals/Evaluation meeting with Ms. Echols. Wilbur Morris is included in the meeting. The group discussed future goals for The Plaintiff. No concerns behavioral or performance issues were expressed by Mr. Bonner or Mr. Morris.

3. On Friday, March 17th, 2017 the Plaintiff has a performance meeting with James "Jinx" Bonner, Wilbur Morris and Vanessa Monica who attended via phone. Ms. Echols points out that she has noticed various colleagues being granted opportunities and growth, while she is not. There were several times when Wilbur Morris expressed to Ms. Echols that she was in the running for an opportunity, but management decided to go with another Coordinator. Mr. Morris did not provide any reason as to why Ms. Echols was passed over.  In the meeting the Plantiff states "I have come to you numerous times saying I am unhappy with my day-to-day tasks. Instead of taking responsibility for what role you may play in that as my managers, you do everything in your power to discredit my concerns and make it seem like it is just me."

4. April 10, 2017 the Plaintiff reached out to HR Business Partner, Bhavna Sharma expressing concern with her work environment.

5. Ms. Sharma is a light-complected, Middle-Eastern American Woman.

6. The Plaintiff included James "Jinx" Bonner in all of her complaints. At the time, Jinx Bonner was the Senior Director of Music Programming Operations. He was over the day-to-day tasks of Music Programming Coordinators and Wilbur Morris' boss. Both he and Mr. Morris worked in conjunction with each other in the day-to-day management.

   a. Mr. Bonner was removed from any further proceedings with Human Resources regarding Ms. Echols' concerns. He was not included in any further meetings or

anything regardless of the Plaintiff equally detailing Mr. Bonner and Mr. Morris' involvement.

    b. James "Jinx" Bonner is a lighter-complected African-American male.

7. Wilbur Morris is a lighter-complected African-American male.

8. Thursday, April 11th, 2017 Ms. Echols met with Ms. Sharma. In the meeting Ms. Echols gave Ms. Sharma a detailed account of the March 24th meeting. Ms. Sharma suggested that The Plaintiff invites Ms. Morris to talk a walk in order to discuss and resolve their differences.

    a. Ms. Sharma asked The Plaintiff "Do meetings get heated because you are defensive?", "Do you have an attitude," "Have you showed any public displays of anger amongst the team?"

    b. Ms. Sharma noted that she had previously had numerous strategy meetings for The Music Programming Coordinator Team with Wilbur Morris. She insisted that he had not said anything negative about The Plaintiff's performance. Ms. Sharma reviewed the notes she had previously written in a notebook from those meetings while insisting there was no negative feedback about Ms. Echols' performance.

9. June 23rd, 2017 Ms. Echols once again reached out to Bhavna Sharma detailing various incidents that were leading to an uncomfortable and hostile work environment.

10. September 5th, 2017 Ms. Echols reached out to Walt Sanderson, Vice President of Human Resources, inquiring who would be the next person to talk to besides Ms. Sharma. Walt Sanderson is an African-American male. The Plaintiff expressed she was unhappy with Ms. Sharma's previous suggestions and treatment of her concerns. Mr. Sanderson directed The Plaintiff to Shelly Colon.

11. On September 7th, 2017 The Plaintiff reached out to Shelly Colon.

12. Ms. Colon is a Caucasian Woman.

13. Ms. Colon is currently the Vice President of Human Resources.

14. In September 2017 Ms. Colon was of a lower title. She was Ms. Sharma's boss.

   a. The Plaintiff expressed her concerns with her prior meetings with Ms. Sharma. Ms. Echols went on to explain that she had observed that Ms. Sharma and Mr. Morris had developed a very close working relationship, and she believed that it was affecting Ms. Sharma's views of her concerns. Ms. Colon had a conversation with The Plaintiff and looped Ms. Sharma into the next proceedings. Ms. Colon then directed The Plaintiff back to Ms. Sharma for any future concerns.

15. Wednesday, December 20, 2017 Ms. Echols expressed to Bhavna Sharma and Walt Sanderson that she was experiencing ongoing events that were making her uncomfortable at the office. These events included but were not limited to various vandalisms to her vehicle that occured while parked at the office. Ms. Echols raised these points in order to explain her belief that WIlbur Morris was targeting her and using his position to intimidate and impose harsher rules on her.

16. Thursday, January 4th, 2018 The Plaintiff sent a rebuttal to the Written Warning she was given by Ms. Sharma per Wilbur Morris' request. The rebuttal was sent to both Walt Sanderson and Bhavna Sharma.

   a. In the rebuttal Ms. Echols states that she believes she is being retaliated against and cites the SiriusXM No Retaliation Policy.

17. Monday, January 8th, 2018 at 3pm Ms. Sharma holds a follow-up meeting to the written warning with the Plaintiff and Walt Sanderson. In the meeting they ask what things can be done in order to improve Ms. Echols' work. environment. The two do not disclose any

details on their prior investigation or how they reached a conclusion in regards to Ms.

Echols' previously expressed concerns about Wilbur Morris and this written warning.

18. In May 2018, The Plaintiff filed a formal complaint via EthicsPoint, the internal complaint portal.

19. Tuesday, May 22nd, 2018 at 11:45 am The Plaintiff met with Ravi Motwani, Vice President and Associate General Counsel of Employment Law for SiriusXM. Mr. Motwani is a Middle-Easten American male.

20. June 14, 2018 Mr. Motwani concluded that Ms. Echols was not subjected to a hostile work environment.

   a.  Wilbur Morris was removed as The Plaintiff's manager per Ravi Motwani. She was then placed under the Supervision of the Senior Director, Vanessa Mojica.

   b.  Mojica is a light-complected, Latina Woman who is based out of the New York office.

21. May 22nd, 2019 The Plaintiff reached out to Adelmise Warner telling her of her experiences at SiriusXM.

22. Ms. Warner is the newly-appointed Head of Diversity & Inclusion for SiriusXM.

23. Ms. Warner maintained the title she held at Pandora. After the merger, Pandora took over SiriusXM's Human Resources Department. Prior to the merger there was no Diversity & Inclusion Department at SiriusXM. Ms. Warner sends The Plaintiff's account of her experiences out to her subordinates in The Human Resources Department. Ms. Warner directs The Plaintiff back to Bhavna Sharma.

### PRIOR HARASSMENT

24. Throughout 2017, Mr. Morris began displaying various micro-aggressions and passive-aggressive, unprofessional behaviors towards the Plaintiff. Ms. Echols would

later detail these behaviors to HR Business Partner, Bhavna Sharma and how they were starting to make her feel uncomfortable. These behaviors included:

   a. Pretending to not see The Plaintiff when they were both walking to the office.

   b. Ignoring The Plaintiff if she came to his desk for a question.

   c. Interrupting various conversations The Plaintiff would be having with other colleagues. Mr. Morris would interrupt, start a conversation with the other party and never even acknowledge Ms. Echols' presence.

   d. Dismissing conversations or concerns The Plaintiff would express with "Whatever, Nikkia. You're right. You're always right." or "I do not have time to argue with you."

25. On Friday, March 24, 2017 at 12:58 James Bonner sent the Plaintiff a calendar invite for a meeting at 1:00pm. The meeting was then changed to 3pm.. In this meeting, James Bonner and Wilbur Morris accuse The Plaintiff of not knowing how to do her job for the first time.

26. April 2017, during a walk in attempt to resolve their differences, Wilbur Morris told Ms. Echols that he thinks her coming to The Music Department and asking for things "makes [her] look entitled, pushy and aggressive."

27. June 20th, 2017 Wilbur Morris saw Ms. Echols in a studio and proceeded to come in and ask numerous questions about her studio usage. Including times, days, length, etc. He never told me to leave the studio. The plaintiff asked why she was being questioned. Wilbur replied, "Is it odd for your **manager** to ask you questions about your whereabouts? I have to go find Jason [Clark] and [DJ] Nina [9], but we may revisit this."

    a.  There are numerous studios on the 2nd floor that, at the time, were rarely used. Coworkers in the Music Department often went to the studios at their own discretion to do work.

    b.  It was common culture to go upstairs without putting in formal requests or sending announcements. Several colleagues would do the same.

28. June 23rd, 2017 the Plaintiff reached out to Bhavna Sharma detailing the interrogation in the studio, the level of discomfort she was feeling since she initially reached out in March. The Plaintiff detailed various incidents including the June 2017 interrogation.

29. July 31, 2017 Wilbur Morris held a one-on-one Supervisory meeting. Adam Coker was also on the calendar invite.

30. Adam Coker is a Caucasian male.

31. The July 31st, 2017 meeting was intended to be part of a new initiative for monthly, one-on-one management check-ins for all of the DC Music Programming Department Coordinators. This was the only monthly meeting the trio ever had. Once the meeting began, Ms. Echols inquired why Mr. Coker was in attendance.

    a.  Mr. Morris and Mr. Coker explained the Adam Coker was training to transition into a management position, but was not yet a manager. They insisted that they intended to explain that in the meeting eventually.

    b.  The only negative performance feedback Mr. Morris noted was The Plaintiff's use of studios without his permission.

32. Wednesday, September 6th, 2017 the Music Programming Coordinators had their monthly staff meeting. The department staff in the offices in New York, Los Angeles, Nashville, etc. all attend the meeting via phone or video conference. Adam Coker, took a turn speaking that is usually reserved for managers. The managers did not preface

Adam's new role. The DC staff had previously been told in the July one-on-one performance meetings that Adam Coker was not yet in a management role.

    a. Once the floor was opened for questions at the end of the meeting, The Plaintiff asked 2 questions:

        i. Can the managers explain for the group Adam's new role?

        ii. Can Managers give their team members a head's up before they go on vacation?

    b. Wilbur Morris and Jinx Bonner asked The Plaintiff to stay for a few minutes after the staff meeting to further explain the two questions and whom they were directed at.

    c. Mr. Morris approached The Plaintiff's desk afterward and said "Vanessa is working from home tomorrow. I will have S.Dot [Sean Mascoll] send you a note."

33. September 7th, 2017 The Plaintiff was sent a calendar invite from James Bonner for a meeting with himself, Adam Coker and Wilbur Morris, 15 minutes prior to the time the meeting was scheduled. In the meeting Mr. Morris and Mr. Bonner reprimanded The Plaintiff for the logs on the Business 70s channel. The meeting went awry. Mr. Bonner and Mr. Morris accused The Plaintiff of "lacking competency in the basic functions of [her] job."

34. Both Mr. Bonner and Mr. Morris used yelling, banging on the table and other unprofessional tones and actions to make their points.

35. September 11th, 2017 Wilbur Morris sent an email recapping the September 7th meeting. In said email, Morris refers to The Plaintiff's asking questions as a "behavioral issue." Mr. Morris threatens to place The Plaintiff on further disciplinary action if the problems persist.

36. December 15th 2017 around 4pm, Wilbur Morris sees The Plaintiff open a studio door and look inside.

   a. Ms. Echols did not sit down or fully go inside the studio

   b. The Plaintiff sends texts to a couple of friends stating that she feels that Wilbur just followed her and it makes her feel uncomfortable. She expresses that she feels he is planning to get her in trouble.

   c. Around 4:30pm, Morris emails Ms. Echols with Vanessa Mojica on the thread. He accuses Ms. Echols of using the studio despite him previously asking her not to. The Plaintiff makes it clear that she was not using the studio.

37. Monday, December 18th 2017 Wilbur Morris reached out to Bhavna Sharma

   a. Around 5:30pm, Ms. Sharma apologized to Wilbur Morris out on the office floor for having to reschedule the meeting he requested. She moved the meeting to the next day, Tuesday, December 19th 2017.

38. Wednesday, December 20th 2017 around 3pm Bhavna Sharma calls the Plaintiff on her desk phone asking if she has time to catch up with Ms. Sharma since they had not talked.

39. Wednesday, December 20th 2017 around 3:30pm Ms. Sharma sends The Plaintiff a calendar invite for a 4pm meeting with herself and Walt Sanderson. Sharma labels the meeting as "catch-up" on the calendar invite.

   a. In the meeting, Ms. Sharma reveals that Wilbur Morris turned in footage of The Plaintiff doing a segment on the TV Show TMZ Live in a studio. She states that Mr. Morris previously warned The Plaintiff not to use studios without his permission.

    b.  Sharma and Sanderson proceed to ask questions about the Plaintiff's participation in the show.

    c.  At the time, the footage in question is 2 months old.

    d.  Jason Clark, a light-complected, male Coordinator would also do segments on TMZ Live from his desk.

    e.  Until around the end of 2017, Jason Clark and WIlbur Morris' desks were right next to each other.

    f.  Wilbur Morris had not made HR aware of Jason Clark's participation in the TV show.

40. Thursday, December 21st, 2017 the Plaintiff was issued a formal Written Warning for using studios without Wilbur Morris' permission and for her participation in the television show, TMZ Live, during work hours.

41. September 11th, 2018 James Bonner falsely accused the Plaintiff of causing an outage that she did not cause. Mr. Bonner did so via a reply all email with various management and Music Programming staff on the thread.

## **RETALIATION**

42. Withheld from Promotion.

    a.  Ms. Echols has been not been promoted since transferring to The Music Department on November 19th, 2015

    b.  Ms. Echols is the most senior Music Programming Coordinator in the Washington, DC office.

    c.  Everyone else that was in the Music Programming Coordinator position in the Washington, DC office when the Plaintiff started in November 2015 that is still with the company has been promoted **at least once**. These colleagues include:

Dan Gluckman, Jacqueline Wilding, Rawle Bercerril, Bond Collard, Jheanelle

Morgan, Ellen Flores, Adam Coker, Andy Hess, and Marie Steinbock.

d. In 2019, Alex Lubeck and Pablo Salazar were promoted to Assistant Music

Programmer. Both started with the company about a year after the Plaintiff.

43. Increasingly Negative Performance Reviews.

a. June 2018 Vanessa Mojica was instructed per Ravi Motwani to conduct a

performance evaluation and future performance evaluations in place of Wilbur

Morris' previous evaluation.

b. Ms. Mojica's evaluation scores for the Plaintiff were worse than the previous

scores given by Mr. Morris.

c. February 2019 Ms. Mojica conducted The Plaintiff's 2018 evaluation.

d. The February 2019 evaluation scores were worse than the previous.

e. September 18th, 2019 Ms. Mojica conducted a mid-year performance evaluation.

f. Bhavna Sharma attended the evaluation because The Plaintiff requested an HR

employee be present.

g. Ms. Mojica and Ms. Sharma spent minimal time on positive feedback

h. The majority of the September 18th 2019 Mid-Year Performance Evaluation was

spent talking about Ms. Echols' personality and how she will not be promoted

because of it.

   i.   Mojica called The Plaintiff disrespectful.

   ii.  Ms. Sharma offered that The Plaintiff should "come in here and say 'ok,

        cool' to whatever criticism we give you. Until you learn how to do that,

        then maybe we can talk about promotion. It does not matter if you think

        you are performing well, Vanessa is the second manager that does not

think so. Management's perception is all that matters. We are giving you great advice as women of color in this male-dominated industry because no one was there to give us any."

iii. The plaintiff pointed out that if they were going to introduce being a woman of color to the conversation, the perception of her is very different as an African-American woman than the perception of Ms. Sharma as a lighter-completed Middle-Eastern American woman and Ms. Mojica as a lighter-completed Latina-Woman.

iv. The two looked at each other and laughed stating, "it does not matter because we are all of color."

v. Ms. Sharma also told Ms. Echols to stop asking for various opportunities because she will not get anything she wants until management gets what they need. Management needs the Plaintiff to be at 100% all of the time in order to be promoted stating, "the company's standards are high and we will not lower them in order to promote you."

i. Friday, January 31st, 2020 at 11am, Ms. Mojica conducted The Plaintiff's 2019 Performance Review via video conference with Ms. Sharma.

i. The 2019 evaluation scores were lower than all of the previous evaluations.

ii. Mojica insisted that she has seen improvement since the September 2019 mid-year evaluation , but the scores can not reflect that because the evaluation is for the entirety of 2019.

iii. Mojica did not give any specific dates, examples, shows or times in order to support her lower scores.

44. Withheld from a pay increase.

    a. February 2019, Ms. Echols did not receive an annual pay increase for the first time.

45. Withheld from various Work Opportunities.

    a. Approximately 2017, The Music Programming Department began highlighting an Employee of the Month.

        i. Ms. Echols has never been Employee of the Month since the Department began giving out the accolade, despite various efforts.

        ii. Ms. Echols has never gotten any type of accolades from the Music Department Managers.

        iii. In April 2019 Ms. Echols called her being left out to the attention of Vanessa Mojica. Mojica stated to the Plaintiff, "you should not be working for accolades or recognition. You should find satisfaction in knowing that you did your job."

    b. Since February 2016, the Plaintiff has annually sent Channel Wish Lists to Vanessa Mojica, James Bonner, Wilbur Morris and Adam Coker.

    c. As of February 2020, Ms. Echols has never been assigned even one channel from her channel wish list.

        i. October 2019 several channels on said list became available when Jason Clark resigned from the company. The Plaintiff was still not assigned to one.

    d. As of February 2020, Ms. Echols has never been allowed to travel with the Real Jazz channel, or any other channel, to various events that have taken place in various off-site locations including, but not limited to, Havana, Cuba; St.

Petersburg, Russia; Montreal, Canada; Detroit, Michigan; Chicago, Illinois and Monterey, California.

e.  Real Jazz is one of the Plaintiff's primary channels.

f.  Since November 2015 Ms. Echols has been assigned to Real Jazz.

g.  The Program Director and Vice President are usually sent without the Plaintiff.

h.  Ms. Mojica often sends someone else in place of Ms. Echols.

    i.  Bond Collard was sent to Monterey, California in place of Ms. Echols.

    ii.  The Monterey Jazz festival funded the travel arrangements to Monterey, California, not SiriusXM. It would have been of no extra cost to the company to send Ms. Echols.

    iii.  At the time Bond Collard was working out of the Los Angeles office.

i.  Plaintiff has only been allowed to travel to the New York office for channel events

j.  Various Music Programming Coordinators have traveled to work on-location for their channels or for other channels.

k.  May 8th, 2018 Wilbur Morris denied the Plaintiff's request to be an intern mentor via email. Vanessa Mojica and Adam Coker were copied on the email thread.

46. Withheld From Transfer to Los Angeles Office

a.  September 6th, 2017 at 4:01pm Ms. Echols expressed her interest in working in the LA Office to Wilbur Morris and Vanessa Mojica via email.

b.  January 8th, 2018 The Plaintiff expressed her interest to transfer to the Los Angeles office to Bhavna Sharma and Walt Sanderson

c.  January 24th 2019 at 3:29pm Ms. Echols emailed Shelley Colon expressing her interest in transferring to the Los Angeles Office

    d. Alex Lubeck was transferred from the Washington, DC office to the Los Angeles Office in May 2019.

        i. Alex Lubeck is a Caucasian Male.

    e. Bond Collard was transferred from the Washington, DC office to the Los Angeles office in September 2019.

        i. Bond Collard is a Caucasion Male.

47. Increased Workload.

    a. Up until November 2019 The Plaintiff's channels were: 40s Junction, Business 70s, Business 80s, Business Soul Town, Business Heart & Soul, Escape, Real Jazz, Soul Town and The Covers Channel.

    b. Ms. Echols had the most channels all of the coordinators and Assistant Music Programmers in the Music Programming Department across all of the office locations.

    c. April 17th, 2019 at 3pm in a scheduled phone call, the Plaintiff expressed to Vanessa Mojica that she was overwhelmed by her workload.

        i. Ms. Echols cited that things become especially overwhelming when they have specialty programming like during Jazz Appreciation Month (April) or on holidays.

        ii. Ms. Mojica told the Plaintiff she "should be grateful to be doing so much heavy lifting."

    d. In November 2019, Jazz Holiday and Holiday Soul were added to The Plaintiff's workload in addition to the previously listed channels. This made for a total of 11 channels.

e. No one else in The Music Programming Department had anywhere close to 11 channels.

f. The Plaintiff was responsible for training and overseeing the transition off of Business 70s, Business 80s, Business Soul Town and Business Heart & Soul to 3 other coordinators.

   i. Ms. Echols was still responsible for checking those channels during the transition.

48. Increased Scrutiny.

a. June 6th, 2019 via phone call Vanessa Mojica informed The Plaintiff that Human Numan complained that Ms. Echols was not communicating with him, forgot to place some sweepers in a show and had two voicetracks go over the air back-to-back.

b. The Plaintiff proved that she did indeed forget to place some sweepers; however, the allegations of not communicating and a misplaced voicerack were untrue.

c. June 6th, 2019 Ms. Echols forwarded her various correspondences with a Human Numan to Vanessa Mojica.

d. June 28th, 2019 Ms. Echols asked Ms. Mojica if there were any way she could be removed from Human Numan's channels since neither of them enjoyed working with each other. The Plaintiff expressed that the false allegations made her uncomfortable.

e. Human Numan has a long-standing reputation for erratic behavior and work habits.

f. July 2nd, 2019 Mojica denied the Plaintiff's request to be removed from Numan's channels via email due to business need.

     i.     Mojica copied Darrin Smith, Vice President of Music Programming;

                Bhavna Sharma, HR Business Partner; and Shelly Colon, Vice President

                of Human Resources on her response.

     ii.    Darrin Smith is a Caucasian Male.

     iii.   Mojica proceeded to call thePlaintiff combative.

     iv.   Mojica said the Plaintiff lacks accountability.

     v.    Mojica threatened to place the Plaintiff on a performance plan if the

                behavior does not change.

     vi.   The Plaintiff forwarded everyone a copy of what went over the air and

                previous examples of her taking accountability for mistakes.

     vii.  No one replied to Ms. Echols' response.

g.  September 18th, 2019 in the Mid-Year Evaluation meeting Ms. Mojica suggested

    that the Plaintiff document each task she completes daily in a Microsoft Word

    document and send it out to all of her Program Directors at the end of every day.

     i.     Mojica suggests this would be a step to get a promotion.

     ii.    Coordinators are not required to record and report their tasks daily.

h.  Until approximately June 2019, Wilbur Morris sat in a desk diagonally across

    from the Plaintiff.

     i.     The desks are about 5 ft away from each other. They are in very close

                proximity.

     ii.    The desks face each other.

     iii.   Morris would stand while talking on the phone and stare at the Plaintiff.

     iv.   Morris would monitor when the Plaintiff would leave her desk.

     v.    Around 2019, James "Jinx" Bonner was removed from the Music Programming Department and relocated to the 2nd floor.

    vi.   Wilbur Morris then took Bonner's old desk, finally creating more space away from and taking him out of the direct line of sight of the Plaintiff.

### COMPARATORS

49. Marie Steinbock is a Caucasian Woman.

    a.   Approximately April 2015, Ms. Steinbock and Ms. Echols were both in the same round of interviews for the Music Programming Coordinator position.

    b.   Approximately August 2015 Steinbock was hired for the Music Programming Coordinator position in the DC office.

    c.   The Plaintiff interviewed for the position twice, losing the first round to Ms. Steinbock.

    d.   Ms. Steinbock was chosen over the Plaintiff for the Music Programming Coordinator position despite:

       i.   Having less experience in Radio than the Plaintiff.

      ii.   Being an out-of-state hire. Ms. Steinbock was living in Michigan at the time; Ms. Echols was living in Maryland.

     iii.   Being an external hire. Ms. Steinbock was not employed with SiriusXM. The Plaintiff was already employed with SiriusXM in Washington, DC in the Talk Programming Department.

    e.   February 2016, Marie reached out to management expressing her future interests after a round of promotions.

    f.   In 2016, Ms. Steinbock reached out to HR with a complaint against Dan Gluckman.

    g.  In Spring 2016, Ms. Steinbock was transferred to the New York office and assigned channels to better suit her interests.

    h.  In July 2016, Ms. Steinbock was promoted to Assistant Music Programmer.

    i.   In February 2019 Marie Steinbock was promoted to Program Director

50. Wilbur Morris, an African-American, lighter-complexed male, was previously caught having sex with a female coworker on the office premises while still in the Coordinator position. He was still promoted to a management position.

51. Bond Collard is a Caucasian male.

    a.  January 2015 Collard started with SiriusXM in Washington, DC in the Broadcast Operations Center.

    b.  October 2015 Collard was hired by and transferred to the Music Department in Washington, DC as a Full-Time Music Programming Coordinator.

    c.  Approximately March 2018 Collard was removed from working the Music Row Happy Hour broadcast due to his inability to successfully run the boards on his own.

    d.  September 2019 Collard was promoted to Assistant Music Programming Coordinator.

    e.  September 2019 Collard was granted a transfer to the Los Angeles office.

52. Pat McKay is the only African-American, brown-skinned, female Program Director. She has been with the company for decades.

53. In 2016 Dan Gluckman, who is a White male, had an HR complaint filed against him when he was still in the Coordinator position. Gluckman was still promoted.

    a.  Approximately January 2014 Gluckman was hired as a Music Programming Coordinator.

   b.  June 2016 Gluckman was promoted to Assistant Music Programmer

   c.  February 2019 Gluckman was promoted to Program Director.

54. Jason Clark is a light-complected African-American Male.

   a.  Throughout 2017 Jason Clark filmed segments with TMZ Live while at work.

   b.  December 2017 Wilbur Morris did not turn in Jason Clark to HR for his
       participation in the TV show.

   c.  December 2017 Clark was given a verbal warning for his participation in the
       television show as opposed to the Written Warning that the Plaintiff received.

   d.  December 2017, the time of the discrepancy, both Clark and the Plaintiff were
       Coordinators.

55. Alex Lubeck is a Caucasian Male.

   a.  August 2016 Lubeck was hired as a Music Programming Intern. The Plaintiff was
       already a Full-Time Music Programming Coordinator at the time.

   b.  September 2017 Lubeck was promoted to Full-Time Music Programming
       Coordinator.

   c.  May 2019 Lubeck was transferred to the Los Angeles office.

   d.  May 2019 Lubeck was promoted to Assistant Music Programmer.

56. Pablo Salazar is a Latin-American male.

   a.  2016 Salazar was hired as a Music Programming Intern. The Plaintiff was
       already Music Programming Coordinator at the time.

   b.  2017 Salazar was hired as a Full-Time Music Programming Coordinator.

   c.  Around June 2019 Salazar was promoted to Assistant Music Programmer.

   d.  February 2020 Salazar is scheduled to be promoted to Program Director.

**RELIEF**

The Plaintiff seeks:

1. Two years of backpay as if promoted to the Assistant Music Programmer position.

2. Promotion to the Assistant Music Programmer position.

3. Pain & suffering for increased stress and workload. The stress resulted in the Plaintiff being admitted to the hospital.

4. December 17th The Plaintiff was admitted to Washington Hospital Center due to health complications brought on by stress. Plaintiff seeks the cost of the medical bills.

5. Attorney Fees.

6. Court costs.

In closing, I, the Plaintiff, Nikkia Echols, hereby certify and acknowledge that the preceding statements are true to the best of my recollection.


Nikkia Echols